(13 Misc. Rep. 294.)

### PEOPLE v. BRADY.

(Court of Sessions, Albany County. June, 1895.)

DISORDERLY PERSON—FAILURE TO SUPPORT WIFE.

    Code Cr. Proc. § 899, subd. 1, declaring a disorderly person one who abandons his wife without adequate support, does not apply to one whose wife is guilty of adultery.

Appeal from police justice of Albany.

Francis J. Brady was adjudged a disorderly person, for neglecting to support his wife, and was required to give an undertaking, as required by Code Cr. Proc. § 901, subd. 1, and he appeals. Reversed.

Edward J. Meegan, for appellant.

Eugene Burlingame, Dist. Atty., and John T. Cook, Asst. Dist. Atty., for respondents.

CLUTE, J. This is an appeal from a judgment of conviction under subdivision 1 of section 899 of the Code of Criminal Procedure, which provides:

"The following are disorderly persons:

"1. Persons who actually abandon their wives or children without adequate support, or leave them in danger of becoming a burden upon the public, or who neglect to provide for them according to their means."

On the trial, the defense made to the charge was that the wife had been guilty of adultery, and the defendant offered to prove the fact. The police justice refused to receive the testimony, holding that, if true, it was no defense. For the purpose of considering the law question involved on this appeal, we are bound to assume that the charge made by the husband against the wife is true. The question is therefore presented whether a husband is a disorderly person, under the statute, if he refuses to continue to support his wife if she is an adulteress.

It is a well-settled principle of the common law that if a wife is guilty of adultery the husband may turn her away, and he will not be liable even for strict necessaries which may be furnished to her by third persons while she is living separately. 2 Wait, Law & Prac. 330; 2 Bish. Mar. Div. & Sep. (Ed. 1891) § 1228. There is nothing in the Code of Criminal Procedure which changes this rule of the common law and makes the husband liable absolutely, and at all events, whatsoever the fault or crime of his wife. A case arose in England in which the precise question we are considering was decided. Culley v. Charman, 7 Q. B. Div. 89. The defendant in that case left his wife because she had committed adultery, and was prosecuted for neglecting to support her. The counsel for the crown argued that the statute made a rule different from the common law, to protect the public from the support of the wife; but the court held not. Hawkins, J., said:

"I do not think there is any need to cite authorities to show that a husband is not bound at common law to maintain a wife who has been guilty of adultery and who is living apart from him. The question is whether it was the object of this statute to impose a liability upon him, in such a case, that did not exist before. I do not hesitate to come to the conclusion that it was not, and that the order ought not to have been made. It seems to me impossible to suppose that the statute intended to cast on the husband the obligation of maintaining a wife who has committed adultery and gone away from him."

In the case of Rex v. Flintan, 1 Barn. & Adol. 227, it was held that a man is not liable to the penalty of 5 George IV., c. 83, § 3, for neglecting and refusing to maintain his wife where she has left him and committed adultery, although he himself has been guilty of adultery since her departure. In the case of State v. Schweitzer, 57 Conn. 532, 18 Atl. 787, the defendant was prosecuted under section 3402 of the General Statutes of Connecticut, which provided that every person who shall unlawfully neglect to support his wife and children shall be sentenced to hard labor, etc. On conviction, an appeal was taken to the supreme court. The conviction was reversed. Andrews, C. J., in the opinion, said:

"We think the court was correct in charging that adultery, if proved, was a sufficient defense. A husband may lawfully refuse to support an adulterous wife. 1 Selw. N. P. (Wheat. & Whart. Ed.) 205, 207; Gill v. Read, 5 R. I. 343; Hunter v. Boucher, 3 Pick. 289; Schouler, Dom. Rel. 91; 1 Bish. Mar. & Div. § 573."

In Carney v. State, 4 South. 285, 84 Ala. 7, a husband was prosecuted under a statute forbidding the abandoning of one's wife and child and leaving them in danger of becoming a burden to the pub-

lic. The defense was the adultery of the wife. Judge Sommerville, writing for the court, said:

"The statute cannot be construed to make it criminal for one to abandon his wife under any and all circumstances. If she be guilty of adultery, as the evidence tends to show the defendant's wife was in this case, he would certainly be excused in leaving her. * * * There can be no guilt where there is legal excuse or justification for the act charged."

These cases establish that the defendant Brady is not bound to support his wife, under the circumstances disclosed in his offer of proof. It would be shocking to send a man to the penitentiary for the nonsupport of his wife if she is an adulteress. The obligations of the husband and wife are mutual, and the right to claim support depends upon the continued virtue of the wife. The honor of the family, the conscience of the community, and Christian teachings command this rule. There is nothing in People v. Mitchell, 2 Thomp. & C. 172, which militates against this doctrine. In that case, in answer to a charge of nonsupport, the defendant put in evidence that he had begun a divorce suit against his wife, and that a judgment in his favor had been reversed at general term, and that he had paid a certain sum of money. There was no offer, in the case, of any testimony to prove that the wife had been guilty of adultery, which distinguishes it from the present case, and the record in the divorce case, even if unreversed, was incompetent within the rule, "Res inter alios acta alteri nocere non debet." The contention of the counsel for the people that the remedy of the husband, in a case like the one at bar, is to secure a divorce, and that until he procures one he must, under penalty of imprisonment, support his wife, is not founded in reason, and is against the current of authority. No statute imposes this obligation upon him. The injustice of such a doctrine is apparent, when we recall that the husband in a divorce suit must not only pay his own lawyer, but his wife's lawyer, and poverty is no answer to a motion for counsel fees, and, if he cannot pay the counsel fees awarded for the wife's defense, his complaint will be dismissed. Cohen v. Cohen, 11 Misc. Rep. 704, 32 N. Y. Supp. 1082; Walker v. Walker, 82 N. Y. 260. If, therefore, the husband is without means for a divorce suit, unless he can defend himself against these proceedings by showing to the police magistrate the wife's adultery, he must always give up his earnings to support a prostitute, or else remain a prisoner in the penitentiary. Judgment of police magistrate reversed, and defendant discharged.

Judgment reversed, and defendant discharged.