STEPHEN WHITTLE, AS TRUSTEE OF LOUISA SCHLEMM, RESPONDENT, v. WILLIAM SCHLEMM, APPELLANT.

Submitted December 8, 1919—Decided March 1, 1920.

The right of a wife, while living separate and apart from her husband, to secure funds provided for her support in a separation agreement, persists even after the commission of an act of adultery by her, unless there is an express stipulation and limitation in the agreement that payment shall cease in the event that she becomes unchaste, for, without such provision, the common law obligation of a husband to support his wife continues, unless and until he procures a divorce from her. *Devine* v. *Devine*, 89 N. J. Eq. 51, overruled.

On appeal from the Supreme Court, whose opinion is reported in 93 *N. J. L.* 78.

For the appellant. *J. Emil Walscheid.*

For the respondent, *Weller & Lichtenstein.*

The opinion of the court was delivered by

WALKER, CHANCELLOR. The plaintiff-respondent commenced an action in the District Court of Hoboken to recover sixteen weeks' installments, of $25 each, due from the defendant-appellant to the plaintiff-respondent as trustee named in articles of agreement for separation entered into between the defendant and his wife. The plaintiff recovered judgment for $400, and the defendant appealed to the Supreme Court, where the judgment was affirmed. *Whittle* v. *Schlemm,* 93 *N. J. L.* 78. We agree with the conclusion reached by the Supreme Court, for the reasons given in its opinion, except that we wish to emphasize the fact that a married man is in law bound to support his wife while the marital relation remains undissolved, and wish to correct certain mistakes in the opinion.

*Aspinwall* v. *Aspinwall,* 49 *N. J. Eq.* 302, was a suit in equity to specifically enforce articles of separation entered into between a husband and wife with a third party as trustee. The Court of Chancery decreed specific performance which this court affirmed as to the payment of the allowance for the support of the wife and children stipulated in the agreement, but reversed as to enforcement of the agreement to separate. The decision in this court was unanimous and the opinion was by Chief Justice Beasley. It is a leading case. The learned Chief Justice observed (at *p.* 303) :

"And it would be singular, indeed, if the court should refuse to carry into effect stipulations of this character, for, as there is nothing illegal in the fact of husband and wife living apart by mutual assent, and inasmuch as under such conditions the husband would be liable for the maintenance of the wife, it is difficult to see why equity should not enforce the

payment of the sum of money that both parties have agreed to be a reasonable amount for that end."

The reference to equity enforcing such a stipulation was made because that suit was one brought in equity directly by the wife against the husband, ignoring the trustee, and she could not, and, of course, did not, sue at law. The trustee might have done that.

While courts will not compel a husband to pay maintenance to the wife provided for in articles of separation while the parties are living together, yet, when living separate under the articles, such payment will be enforced; and this, notwithstanding the adultery of the wife, unless and until the husband obtains a divorce from her.

The Supreme Court observed that the alleged adultery of the wife in the case at bar was no defence at law to the action on the contract, and differentiated this case from that of *Devine* v. *Devine*, 89 *N. J. Eq.* 51, remarking that that case dealt with an equitable situation, in which the court supplied by implication a condition not in the contract the wife was seeking to enforce, namely, that she would remain chaste, and observed that that case was not controlling, as it appeared to be inconsistent with *Halstead* v. *Halstead*, 74 *Id.* 596, where the contract was enforced in equity after alleged adultery and until the wife applied for and was allowed alimony in divorce proceedings pending against her. From this language of the Supreme Court it would appear that that tribunal's view of the Halstead case was that the wife had committed adultery after entering into articles with her husband, and that the allowance was enforced after the adultery was shown to have been committed. This is incorrect. In the Halstead case the wife sued on an agreement dated June 21st, 1904, which the Vice Chancellor read in connection with a previous agreement, and which, taken together, he said, provided that the husband should pay to the wife $7 a week; that defendant made payments to October 31st, 1904, and one in November; that on March 7th, 1905, the wife commenced an action for divorce against the husband for desertion and adultery, and on November 20th, 1905, an order was made in the divorce suit

that the husband pay to the wife, pending the determination of that suit, the sum of $5 per week. The demand in the Halstead case was for $7 per week from October 31st, 1904 (with credit of $7), to October 20th, 1905, and for the sum of $2 per week from the last-mentioned date to the filing of the bill, or the date of the final decree, as the court should determine, the sum of $2 being the difference between $7 provided in the agreement and the $5 provided in the order for alimony *pendente lite* in the divorce suit. The Vice Chancellor decided that the wife was entitled to the full amount under the agreement up to the order for temporary alimony, and that after that she could not enforce the agreement during the operation of that order.

In the Devine case the Vice Chancellor (at *p.* 55) observed that the legal obligation of a husband to support his wife exists only as long as she shall remain chaste, citing *Bradbury* v. *Bradbury,* 74 *Atl. Rep.* 150. He goes on to say that this is so unless it shall be held that the burden of the agreement for support contained in a separation agreement survives that period, namely, the period of chastity. In our judgment the Bradbury case is not authority for the proposition of the learned Vice Chancellor. In the first place, there was no agreement for maintenance involved. In the second place, the case was on final hearing on bill for alimony in which adultery was not pleaded as a defence. It was observed by the Vice Chancellor in the Bradbury case that adultery, if pleaded and proved, is a good defence to a bill for maintenance without a divorce being procured, citing *Maas* v. *Maas,* 34 *N. J. Eq.* 113; *Perkins* v. *Perkins,* 59 *Id.* 515. The assertion was *dictum;* and each of the cases cited was a suit for maintenance, and in each the defence of adultery was set up, but failed of proof. In neither was there an adjudication in terms that adultery was a good defence in such suits, although it was treated as valid. That question is not involved in the case *sub judice.* The proceedings in the Bradbury, Maas and Perkins cases were ones for maintenance under the statute, now section 26 of the Divorce act (*Pamph. L.* 1907, *p.* 482; *Comp. Stat., p.* 2038, § 26), and were governed by the statutory provisions.

The section referred to provides as follows:

"In case a husband, without any justifiable cause, shall abandon his wife or separate himself from her, and refuse or neglect to maintain and provide for her, it shall be lawful for the Court of Chancery to decree and order such suitable support and maintenance, to be paid and provided by the said husband for the wife and her children, or any of them, by that marriage, or to be made out of his property, and for such time as the nature of the case and circumstances of the parties render suitable and proper in the opinion of the court."

It may well be that the adultery of the wife is a good defence in a proceeding brought under this section, because, if a wife commits adultery her husband is justified in separating from her and bringing suit for divorce. So, even if adultery of the wife be a good defence by the husband when he is sued by her for maintenance under section 26 of the Divorce act, that does not alter the rule which obtains in reference to a suit by a wife to enforce the terms of an agreement for maintenance while the parties are living in a state of separation.

The learned Vice Chancellor who wrote the opinion in Devine *v.* Devine concedes that in England the adjudications from an early date have been to the effect that the adultery of the wife, committed after the execution of a separation agreement, would not deny to her the right of recovery of the stipulated payments falling due after the fact, unless the agreement expressly provided that they should be made only so long as she remained chaste, and that no such covenant would be imported into the agreement by implication; and he adds that those adjudications cannot be appropriately disregarded unless conditions exist in our state which deny to them the force they would otherwise possess. The difference between our law and that of England laid hold of by the Vice Chancellor as making a different rule here than that in England is, that a contract between husband and wife to live apart is not there restricted to the period of their mutual assent, and that such contract for separation may there be specifically enforced; while in New Jersey an agreement for separation can-

not confer on either party the right to live away from the other against the other's will. He deduces from this that it is the policy of the law that the period for which persons in this jurisdiction may contract touching their separation is limited to the period of their future mutual assent, and that, accordingly, in the absence of wrong-doing on the husband's part, he may require his wife's return to his bed and board, and her refusal will not only constitute her an obstinate deserter, but will operate to deny her any right to support from him, notwithstanding the existence of an agreement; and that the wife's act of adultery while thus living separate from her husband, pursuant to the terms of a separation agreement, operates to deny to her husband the right to require her return to him unless he condones the act; and that therefore the legal obligation of the husband to support his wife exists only so long as she shall remain chaste.

We are unable to concur in the reasoning of the learned Vice Chancellor, or to agree, that there is any different rule in New Jersey from that which obtains in England with reference to the right of the wife, while living separate and apart from her husband, to secure the funds provided for her support in a separation agreement even after the commission of an act of adultery by her, because, in our opinion, the husband's liability persists unless there is an express stipulation and limitation in the separation agreement that payment shall cease in the event of her becoming unchaste, for, without such provision, the common law obligation of a husband to support his wife continues—unless and until he procures a divorce from her. The question is one of construction of the agreement, and where husband and wife are living apart under separation articles, there is nothing in the situation which calls for the importation into their contract of a *dum casta* clause, as it is called; on the contrary, the situation, namely, the wife's dependence and the husband's liability for her support while she continues to be his wife, repels such a construction.

At the conclusion of its opinion the Supreme Court states that it is urged that the trial court refused to charge certain

specific requests, and observes that there is nothing in that because the reviewing court has assumed that all of the requests were charged favorably to the plaintiff. This is a mistake. If they were charged favorably to the plaintiff they would have to be reviewed, as it is the defendant who appeals; but there were no requests to charge, for there was no charge, the case having been submitted to the District Court without a jury. What occurred was, that the defendant requested a finding of certain facts, which the court did not do, but gave a general judgment for plaintiff. We think there is no doubt but that the District Court would have rendered the judgment it did even if specific findings were made in favor of defendant as requested. And if such were the state of the record before us we would affirm the Supreme Court. This gives the defendant the benefit of the finding he requested, and he is therefore not harmed on this branch of the case.

The judgment under review will be affirmed, with costs.

SWAYZE, J. (dissenting). My vote for reversal is solely upon the ground that I think the separation agreement is either an attempt at a contract with the wife alone or, at best, for the plaintiff, with the wife and trustee jointly. In either case it seems to me unenforceable at law. Recourse, I think, must be had to the Court of Chancery, as in *Aspinwall* v. *Aspinwall*, 49 *N. J. Eq.* 302, and *Buttlar* v. *Buttlar*, 38 *Id.* 626.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, WILLIAMS, TAYLOR, ACKERSON, JJ. 7.

*For reversal*—SWAYZE, MINTURN, WHITE, HEPPENHEIMER, JJ. 4.